LUCRETIA M. RUE, individually and as administratrix of Nathaniel S. Rue, Jr., deceased,

*v.*

JOHN G. MEIRS and SARAH E. DAVIS.

1. A father has the first and best right to act as the next friend of his infant child, in any litigation necessary for the protection of his child's rights.

2. Forbearance of suit to enforce a disputed claim or right, where the claim or right is honestly asserted under a belief that it is substantial, although it is in fact wholly unfounded, will constitute a good consideration for a promise to pay money.

3. Where a person gives up what he in good faith believes to be a right of action, on the promise of another to pay money for such surrender, the real consideration of the contract consists in the detriment suffered by the person consenting to the surrender, arising from the alteration in his position caused by the promise of the other.

4. A contract will not be reformed which must be construed and carried into effect before reformation just exactly as it would be after it has been reformed.

5. Equity may take jurisdiction whenever it is necessary to compel the person primarily liable for a debt to perform an obvious duty, and thus relieve a person, standing as surety, from a needless burden, and also to prevent circuity of action.

On hearing on demurrer.

*Mr. William H. Vredenburgh,* for demurrant.

*Mr. Frank P. McDermitt,* for complainant.

VAN FLEET, V. C.

The complainant sues in a dual capacity, in her own right, as well as in that which she holds as the administratrix of her deceased brother, Nathaniel S. Rue, Jr. The foundation of her action is a contract made by her father, Robert C. Rue, with the defendants, John G. Meirs and Sarah E. Davis, and which was reduced to writing and signed by her father and the defendants, and which reads as follows:

"This agreement, made the 27th of September, 1875, by and between Sarah E. Davis and John G. Meirs, of Cream Ridge, county of Monmouth, state of New Jersey, of the first part, and Robert C. Rue, of the same place, as the representative of his children, L. M. Rue and N. S. Rue, Jr., of the second part, witnesseth : in consideration of the covenants on the part of the party of the first part hereinafter contained, doth covenant and agree with the party of the second part, Robert C. Rue, that we, Sarah E. Davis and John G. Meirs, of the first part, do agree to pay the sum of $4,000 to R. C. Rue, as the representative of his children, L. M. Rue and N. S. Rue, Jr., provided R. C. Rue makes no objection to the proof of the will and the settlement of the estate of Lucretia S. Meirs, deceased, so far as said will has reference to said children."

The complainant's bill alleges, that this contract grew out of a threatened contest over a paper purporting to be the will of Lucretia S. Meirs, deceased. Mrs. Meirs was the mother of the defendants, and the grandmother of the complainant and her brother, the complainant and her brother being the children of a deceased daughter of Mrs. Meirs. Mrs. Meirs died on the 9th of September, 1875. By her will she made an unequal distribution of her property, giving the defendants much more than two-thirds. The complainant and her brother were both infants at the time of their grandmother's death. Their father was present at the reading of her will, and, immediately after he knew its contents, expressed his dissatisfaction with its provisions, and protested against its admission to probate. The bill says, that the defendants, recognizing the unequal distribution which the testatrix had made of her property, and the grounds which existed for contesting her will, they, to induce Robert C. Rue to forbear from contesting the will on behalf of his children, made the promise contained in the contract. The bill further says, that the will of Mrs. Meirs was, three days after the contract was signed, admitted to probate, without contest, and that since then her estate has been settled, and her property distributed in accordance with the terms of her will, without objection on the part of Robert C. Rue, or his children, but with their acquiescence. But the $4,000 have not been paid, and this action is brought to compel payment.

The defendant Meirs demurs. He disputes the validity of the contract. He says that he and his sister got nothing for their

Rue *v.* Meirs.

promise to pay the $4,000.    This contention attempts, as it seems
to me, to deny what is manifestly undeniable.  The right of Robert
C. Rue to file a *caveat*, as the next friend of his children, against
the probate of Mrs. Meirs's will, stands, I think, free from the
least doubt.    While an infant is incapable of maintaining a suit
or other legal proceeding in his own name, for the protection of
his rights, there can be no doubt, that he is entitled to the benefit
of every remedy recognized by our system of jurisprudence, and
to which an adult of full capacity may resort, the only difference
being, that an infant must proceed in the name of an adult as his
next friend, while an adult may proceed in his own name.  And this
is so because an infant, by reason of the immaturity of his mind,
is incapable of judging when and under what circumstances he
should seek judicial protection or redress, and the courts have,
therefore, adopted, as a rule of practice, for the protection of in-
fants, as well as themselves, that no suit or proceeding in behalf
of an infant shall be entertained, unless instituted by a person
competent to judge whether such step is necessary or proper for
the due protection of the infant's rights.  While any person of full
age and sound mind is competent to become the next friend of an
infant, his nearest relative is usually preferred.    A father, being
the natural guardian of his infant child, has a vested right, as it
has been called, to act as the next friend of his child in a litiga-
tion involving the child's rights, if the father's interests are not
hostile to those of his child, and he has been guilty of no default
or neglect. .  This right is regarded as so superior by the English
courts, that it has been declared, that the father has a right, even
where another person has instituted a suit in behalf of his infant
child, and prosecuted it to decree, to have such other person dis-
placed, after decree pronounced, and himself substituted as next
friend.    *Woolf* v. *Pemberton, L. R. (6 Ch. Div.) 19.*    It would
seem then to be entirely clear, that the defendants, by removing
the opposition which Robert C. Rue intended to make, on behalf
of his children, to the probate of the will, and which he had an
unquestionable right to make, relieved themselves from the only
substantial danger which existed, and that instead of its being
true, that they got nothing for their promise to pay $4,000, it is a

fact, standing free from all dispute, that they have received everything which the contract stipulated that they should receive. The thing that the defendants were bargaining for, was, that the paper which their mother left, as the testamentary disposition of her property, should be proved as her will, without objection, and that their mother's property should be divided and distributed as her will directed. The will was proved without objection, and the property has been divided and distributed as the will directed. The contract, therefore, so far as the defendants were entitled to anything under it, has been fully performed.

The question, whether a promise to forbear suit to enforce a disputed claim or right, where the claim or right is honestly asserted under a belief that it is substantial, although it is in fact wholly unfounded, is sufficient, as a consideration, to support a promise to pay money, has recently been put at rest in this state by a decision of the supreme court. That court said in *Grandin v. Grandin, 20 Vr. 508:* " The compromise of a disputed claim, made *bona fide*, is a good consideration for a promise, whether the claim be in suit, or litigation has not been actually commenced, even though it should ultimately appear that the claim was wholly unfounded—the detriment to the party consenting to a compromise, arising from the alteration in his position, forms the real consideration which gives validity to the promise. The only elements necessary to a valid agreement of compromise are the reality of the claim made, and the *bona fides* of the compromise." And what I understand is meant by the phrase, " the reality of the claim made," is that the claimant shall assert his claim in good faith, believing that it is real, or, in the language of Lord Justice Cotton, in *Miles* v. *New Zealand Alford Estate Company, L. R. (32 Ch. Div.) 266,* "a claim is honest if the claimant does not know that his claim is unsubstantial, or if he does not know the facts which show that his claim is a bad one."

The court, in deciding *Grandin* v. *Grandin,* adopted the principle established by the court of Queen's Bench, in *Cook* v. *Wright, 1 B. & S. 559.* That case was heard by Cockburn, C. J., and Blackburn and Wightman, JJ. The material facts, as stated in the opinion of Mr. Justice Blackburn, were: " The

Rue *v.* Meirs.

defendant was agent for a Mrs. Bennett, who was a non-resident owner of houses in a district subject to a local act.  Work had been done in the adjoining street by the commissioners for executing the act, the expenses for which, under the provisions of the act, they charged on the owners of the adjoining houses. Notice had been given to the defendant, as if he had himself been the owner of the houses, calling on him to pay the proportion chargeable in respect to them.  He attended at a board meeting of the commissioners, and objected both to the amount and nature of the charge, and also stated that he was not the owner of the houses, and that Mrs. Bennett was.  He was told that if he did not pay, he would be treated as one Goble had been.  It appeared that Goble had refused to pay a sum charged against him as the owner of some houses, and the commissioners had taken legal proceedings against him, and he had then submitted and paid, with costs.  In the result it was agreed, between the commissioners and the defendant, that the amount charged upon him should be reduced, and that time should be given to pay it in three instalments.  The defendant gave three promissory notes for the three instalments; the first was duly honored, the others were not, and were the subject of the present action. At the trial it appeared that the defendant was not the owner of the houses.  As agent for the owner he was not personally liable under the act.  In point of law, therefore, the commissioners were not entitled to claim the money from him, but no case of deceit was alleged against them.  It must be taken that the commissioners honestly believed that the defendant was personally liable, and really intended to take legal proceedings against him, as they had done against Goble.  The defendant, according to his own evidence, never believed that he was liable in law, but signed the notes in order to avoid being sued as Goble was." The court decided that the notes sued on were supported by a good consideration, and this ruling was put distinctly on the ground that the defendant, by giving the notes, had induced the plaintiffs to alter their position, by refraining from doing what they might have done if the notes had not been given.  The court says: " There can be no doubt that the practical effect of

the compromise must have been to induce the commissioners to refrain from taking proceedings against Mrs. Bennett, the real owner of the houses, while the notes given by the defendant, her agent, were running, though the compromise might have afforded no ground of defence had such proceedings been resorted to. It is this detriment to the party consenting to a compromise, arising from the necessary alteration in his position, which, in our opinion, forms the real consideration for the promise, and not the technical and almost illusory consideration arising from the extra costs of the litigation. The real consideration, therefore, depends not on the actual commencement of a suit, but on the reality of the claim made, and the *bona fides* of the compromise."

The same doctrine was subsequently declared in *Callisher* v. *Bischoffsheim, L. R.* (*5 Q. B.*) *449.* The court, speaking by Cockburn, C. J., there said : " The authorities clearly establish, that if an agreement is made to compromise a disputed claim, forbearance to sue in respect of that claim is a good consideration ; and whether proceedings to enforce the disputed claim have or have not been instituted makes no difference.      *      *      * Every day a compromise is effected on the ground that the party making it has a chance of succeeding in it [in enforcing his claim or right by suit], and if he *bona fide* believes he has a fair chance of success, he has reasonable ground for suing, and his forbearance to sue will constitute a good consideration. When such a person forbears to sue, he gives up what he believes to be a right of action, and the other party gets an advantage, and, instead of being annoyed with an action, he escapes from the vexation incident to it." Applying these principles to the contract on trial, its validity, in point of consideration, is put beyond dispute. In cases of this class, if the contract has been fairly made, no inquiry will be made as to the adequacy of its consideration. *Grandin* v. *Grandin, supra.* By the terms of this contract, it will be observed, that the advantages were all with the defendants. They were not bound to pay until the other contracting party had performed his part of the contract, and they had received everything under the contract which they were entitled to receive. Stated in substance, the contract is this : the defend-

ants agree to pay Robert C. Rue $4,000, for his children, provided he makes no objection, on behalf of his children, to the proof of Mrs. Meirs's will, and the division and distribution of her estate according to the terms of her will. The $4,000 are not payable until the will has been proved and fully executed—until the opposing or hostile right, which the defendants feared, was actually extinguished. The defendants have now received everything which they were entitled to receive under the contract, and for which they agreed to pay the $4,000, and I think they are, therefore, bound both in law and conscience to abide by their own contract and pay the $4,000.

The defendant also raises a question of jurisdiction. He denies the power of this court to give the complainant the relief she asks. This objection raises a question, which, in view of the peculiar condition of facts which the case presents, seems to me to be one about which strong diversity of opinion may exist, and I must confess that the conclusion which I have reached concerning it is not one which I express without doubt. The draftsman of the bill has attempted to lay a foundation for equity cognizance by asking for a reformation of the contract. The contract, it will be observed, says, that, "in consideration of the covenants on the part of the party of the first part hereinafter contained, doth covenant and agree with the party of the second part, Robert C. Rue, that we, Sarah E. Davis and John G. Meirs, do agree to pay the sum of $4,000 to R. C. Rue." &c. The words, "party of the first part," are used where, it is manifest, the words " party of the second part" were intended to be used. And it is also obvious, that the words "party of the first part," should have been inserted between the words, "hereinafter contained" and the words " doth covenant," in order to make the contract express in formal words the meaning of the parties. But these mistakes are palpable, and do not create the slightest obscurity as to the meaning of the contract, nor prevent it from being so construed as to give full effect to the real intention of the parties. It is a rule of construction, of universal application, that a contract, notwithstanding mistakes therein, shall, if the meaning of the parties can be clearly discerned, be construed as near the minds and appar-

ent intents of the parties as it possibly may be, and the law will permit. *Sisson* v. *Donnelly, 7 Vr. 432.* The subsequent parts of this contract express the intention of the parties in language so clear, simple and explicit that it must, in its present form, be understood and construed just exactly as it would be after it was reformed. Where that is the case, reformation can accomplish nothing. Indeed, there is nothing to reform, for the contract, with the mistake in it, is to be construed and carried into effect just as if it was entirely free from mistake. A mistake, which is harmless, and does no injury, needs no correction. This court cannot take jurisdiction on the ground that the contract sued on needs reformation.

This suit is brought to enforce a money demand, founded on a simple contract. If that was all there was of it, there would not be the least pretence of jurisdiction in this court. And so, if the contract consisted of a promise by the defendants to pay money to the complainant and her brother, for a consideration moving from their father to the defendants, there can be no doubt, that an action at law might be maintained on it, for it is settled, that in cases of simple contract, if one person makes a promise to another for the benefit of a third, the third may maintain an action at law on it, though the consideration does not move from him. It is otherwise when the contract is under seal. *Joslin* v. *New Jersey Car Spring Co., 7 Vr. 141.* But this contract was made by a person acting as trustee for the benefit of his *cestuis que trust.* A father, as the natural guardian of his two infant children, agrees to waive his right, as the person having the first and best right to act as the next friend of his children, to contest the validity of a will by legal proceedings, on condition, that if no contest is made, and the will is admitted to probate, and the testatrix's property is distributed as the will directs, the persons taking the largest benefit under the will, will pay a certain sum of money, not to the children, but to the father for his children. Now, in such a transaction, the father, from the beginning to the end, is acting in a capacity of pure trust. It is true, he is a self-constituted trustee, but he assumes that character under circumstances when the common instinct of our nature made it his duty

Rue *v.* Meirs.

to do so, and when, if he had not done so, he would have allowed, what he believed to be an unconscientious advantage to be taken of his children. The fact that the contract was made by a person acting as a trustee, for the benefit of his infant *cestuis que trust*, may not be decisive on the question of jurisdiction, but it shows that the contract belongs to a class of transactions over which this court exercises a very extensive jurisdiction.

I think there is reason to doubt whether the children could maintain an action at law on this contract in their own names. No promise is made to them; on the contrary, the promise is to their father, the language of the contract being, "we do agree to pay the sum of $4,000 to R. C. Rue, as the representative of his two children." But if the children could have maintained an action at law in their own names, it would be necessary now, as one of them is dead, that two actions should be brought, one in the name of the surviving child, and the other in the name of the administratrix of the deceased child. There may, perhaps, be less doubt about the right of the father to maintain an action at law in his name for the use of his children. I think such action would be maintainable. The cases at law, however, upon this subject are at variance. Judge Story, in his Commentaries on Equity Jurisprudence, calls attention to the fact that the cases at law on this subject are not uniform, and that the law, in consequence, is somewhat uncertain, and then adds: "But, be this as it may, it is certain that a remedy would lie in equity under like circumstances as a matter of trust; for it is laid down in a work of very high authority, if a man gives goods or chattels to another upon a trust to deliver them to a stranger, chancery will oblige him to it." *2 Story's Eq. Jur.* § *1041.* And I suppose it would necessarily follow, that, where a promise was made to one as a trustee for another, upon a sufficient consideration, chancery would oblige the promisor to perform his promise at the suit of the *cestui que trust*, especially in a case where the consideration for his promise consisted in the extinguishment of a right belonging to the *cestui que trust*.

But another fact, and the one which I think possesses the greatest force, remains to be mentioned. The bill alleges, that

25

subsequent to the making of the contract sued on, the defend-
ants, Meirs and Davis, made an agreement apportioning the
$4,000 between themselves, by which it was agreed that Meirs
should pay $3,000, and Mrs. Davis the remaining $1,000, and
that, in pursuance of such apportionment, Mrs. Davis, on the 23d
day of May, 1877, paid Robert C. Rue, who was then the duly
appointed guardian of the complainant and her brother, her quota
of the $4,000.     There can be no doubt, I think, that the making
of this agreement, and its subsequent execution by Mrs. Davis,
raised an equity in her favor as against her codefendant, and
also against the complainant, to be exonerated from all liability
for the $3,000, provided the money could be collected of Meirs.
He is the person who is unquestionably primarily liable as be-
tween Mrs. Davis and himself, and should, therefore, in justice,
in the first instance, be compelled to bear it alone, together with
all the legal expenses attending its enforcement.     Mrs. Davis's
right to exemption from primary liability was known to the
complainant at the time she brought her suit.     I think she was
under a clear equitable obligation to respect that right, and the
only way open to her, to effectually protect Mrs. Davis's right in
this regard, was to bring her suit in this court.     Here a decree
may be made which will give Mrs. Davis the full benefit of any
equity arising to her out of the agreement of apportionment, and
at the same time preserve to the complainant any rights which
may exist in her favor, against Mrs. Davis, in the event that the
whole of the sum due cannot be collected of the person who is
primarily liable.     If the complainant had sued at law, her suit
would have been an open declaration that she intended to vio-
late Mrs. Davis's right to be exempt from primary liability, for,
if she recovered at all in such suit, her recovery would have
been against both defendants as principals, each being adjudged
liable for the whole amount of the recovery.     An attempt by
the complainant, with full knowledge of Mrs. Davis's equity, to
place Mrs. Davis in the situation in which she would stand, by
a judgment at law against her, under which the whole of this
debt might be made out of her property, might, under some cir-
cumstances, be so strongly indicative of a fraudulent purpose on

the part of the complainant as to justify this court in interfering by injunction. Equity will, in cases of this class, take jurisdiction whenever it is necessary to compel the person primarily liable to perform an obvious duty, and thus relieve another person, standing in the position of his surety, from a needless burden, and also to prevent circuity of action. *Irick* v. *Black, 2 C. E. Gr. 189.* For these reasons, I think, this court should retain jurisdiction of this cause.

This suit, in its present condition, is defective in parties. Robert C. Rue, the person with whom the contract, on which the suit is founded, was made, is not a party. His omission is made a ground of objection by the demurrer. He is a necessary party, and this ground of demurrer must be sustained. The others must be overruled.